IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| ROBERT LEE BARNES, | ) | |
|     Plaintiff, | ) | Civil Action No. 7:17cv00080 |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| MALCOLM TAYLOR, *et al.*, | ) | By: Norman K. Moon |
|     Defendants. | ) | United States District Judge |

Robert Lee Barnes, a Virginia inmate proceeding *pro se*, filed a civil rights action pursuant to 42 U.S.C. § 1983, alleging that the defendants, Drs. Moreno and Martinez, denied him adequate medical treatment for his neck and back pain.[1] The parties have filed cross-motions for summary judgment supported by affidavits and this matter is ripe for disposition. Having reviewed the record, I conclude that the parties' motions must be denied.

**I. Dr. Moreno**

On October 26, 2015, defendant Dr. Moreno saw Barnes concerning his neck and back pain. During the visit, Barnes informed Dr. Moreno that he experienced daily pain that ranged from a four to a seven, on a scale of one to ten; he often woke up in the morning with "strong" back pain; there were times when he would bend his body to the side and it felt like the muscles around his spine were ripping apart and were "inflamed and sore"; the pain medication, Indocin,[2] that Dr. Moreno had prescribed several months earlier, did not reduce Barnes' pain; and Barnes

---

[1] I note that Barnes filed an amended complaint naming Dr. Moreno, Dr. Martinez, and Nurse Jane Doe as defendants to the claims that are proceeding in this action. *See* Docket Nos. 11 and 13. By order entered October 18, 2017, the court noted that Barnes' amended complaint replaced his original complaint. *See* Docket No. 13. Barnes subsequently moved to voluntarily dismiss his claims against Nurse Jane Doe and I granted his request. *See* Docket Nos. 37 and 42. Accordingly, only Drs. Moreno and Martinez remain as defendants to this action.

[2] Indocin is a non-steroidal anti-inflammatory drug used to relieve pain and joint stiffness. Moreno Aff. ¶ 6, Docket No. 27-1.

had stopped taking the medication "because it was ineffective."[3] Dr. Moreno asked Barnes if he exercised with weights and Barnes told him that he had not exercised since July 2015. Barnes claims that Dr. Moreno told him to remove his shirt, looked at his chest, and said, "Yeah, you work out." Barnes denied working out and explained that he was "naturally 'cut up' all of his life" and Dr. Moreno responded that, "black people aren't born cut up." Dr. Moreno then ran his hands up and down Barnes' "back around his spine," stated that he did not see anything wrong, and advised Barnes to stop exercising. Barnes insisted that he did not work out, but claims that Dr. Moreno "did not believe him." Barnes asked Dr. Moreno to give him different pain medication and Dr. Moreno "refused to do so."

Dr. Moreno avers that when he saw Barnes on October 26th, Barnes complained of "back pain with no known injury." Dr. Moreno performed a "physical exam, which involved a visual assessment of his chest, back, shoulders and arms," and found no abnormalities or objective signs of injury. Dr. Moreno states that although Barnes "reported occasionally high levels of pain," his vital signs did not reflect physical distress. Dr. Moreno questioned Barnes about the frequency and intensity of his workout because "exercising and weight lifting can often aggravate or exacerbate back pain." Dr. Moreno suggested that Barnes refrain from strenuous activity, but he denies that he ever used the phrase "black people" or that he stated or implied that Barnes lied about his exercise habits. Dr. Moreno states that he diagnosed Barnes with chronic back pain and prescribed Indocin, and that it was his opinion that Barnes did not need and was not a candidate for any pain medication other than Indocin.

In opposition to Dr. Moreno's motion for summary judgment, Barnes avers that he told Dr. Moreno that his neck and back muscles were constantly tight and that he believes that the tight muscles were causing his pain. Barnes also states that on "multiple occasions" he had told

---

[3] I note that it is unclear when and/or for how long Barnes stopped taking the medication.

Dr. Moreno that the pain medication was not working and Dr. Moreno had either increased the dosage or prescribed a different pain medication. However, on October 26th, Dr. Moreno refused to change Barnes' prescription despite Barnes' complaints that it was ineffective and that Barnes continued to suffer pain.

**II. Dr. Martinez**

Just over a year later, on November 18, 2016, Barnes saw defendant Dr. Martinez concerning his neck and back pain. During the visit, Barnes told Dr. Martinez that his pain usually ranged between a four and a seven, on a scale of one to ten, but sometimes it was a nine. Dr. Martinez advised Barnes that he had reviewed Barnes' medical chart and noted that his last x-ray had been taken in 2013. Dr. Martinez ordered another x-ray and continued the previous treatment plan of Indocin, which Dr. Moreno had prescribed. Barnes informed Dr. Martinez that the Indocin "did not work," and that he still experienced pain in his muscles and spine when taking the medication. Dr. Martinez told Barnes that the Indocin was "the best course of treatment" and that he would only prescribe a different pain medication if the x-ray result gave him reason to do so. Before leaving the visit, Barnes told Dr. Martinez that he occasionally had throbbing headaches, sometimes experienced tightness in the back of his head and tenderness in his neck and shoulder muscles, that his pain "sometimes" got so bad that he had to lay down in his bed to "relax the pains," and that he woke up in the middle of the night due to sharp pains in his neck. Barnes asked Dr. Martinez to refer him to a specialist for treatment, but Dr. Martinez refused to do so because Barnes' "condition can't be too serious if [he is] still walking around." Barnes took the Indocin for approximately six weeks after his appointment with Dr. Martinez and then submitted a sick call form on December 29, 2016, indicating that the medication was not working.

Approximately one week later, Barnes saw Dr. Martinez concerning his complaint that the pain medication did not reduce his neck and back pain. Dr. Martinez reviewed Barnes' x-ray results, advised Barnes that the x-ray showed no damage to his neck or back, and stated that he would not change Barnes' medication. Barnes complained that the medication did not work and Dr. Martinez replied that the "only other thing" he could do for Barnes was to follow his "prior treatment plan for Naproxen or meloxicam." Barnes stated that those plans were discontinued because they did not reduce his pain and told Dr. Martinez that he did not want them. Dr. Martinez asked Barnes to keep trying the Indocin. Barnes advised Dr. Martinez that eventually he would return because the medication would not work and that he had previously stopped taking it because it did not work. Dr. Martinez told Barnes it was his choice to stop taking the medication.

Dr. Martinez avers that when he saw Barnes on November 18th and January 6th, Barnes complained of "back pain with no known injury." Dr. Martinez performed a "physical exam, which involved a visual assessment of his chest, back, shoulders and arms," and found no abnormalities or objective signs of injury. Dr. Martinez states that although Barnes "reported occasionally high levels of pain," his vital signs did not reflect physical distress. Dr. Martinez further states that the x-ray that he ordered revealed "no objective evidence of injury and no damage to [Barnes'] neck or back," and, thus, he "suggested" that Barnes continue to take Indocin. Dr. Martinez states that it was his opinion that Barnes did not need and was not a candidate for any pain medication other than Indocin.[4]

---

[4] Dr. Martinez also outlines the Virginia Department of Corrections' (VDOC) guidelines for when and how pain medication can be prescribed to inmates for treatment of issues such as chronic back pain: first, the doctor will prescribe Motrin (at a maximum daily dose of 800 mg); if Motrin is ineffective, the doctor will prescribe Naproxen (at two daily doses of 500 mg); and if Naproxen is also ineffective, the doctor can prescribe Indocin and an intermittent muscle relaxer. According to Dr. Martinez, Indocin is the highest level of pain medication that the VDOC allows inmates to take for issues such as chronic back pain. I note that there is no evidence that Barnes was ever prescribed a muscle relaxer, as allowed for in the guidelines described by Dr. Martinez, and the evidence

4

In opposition to Dr. Martinez's motion for summary judgment, Barnes avers that Dr. Martinez never performed a physical examination on him and that Dr. Martinez told Barnes that the x-ray results showed "degeneration of the bones in [his] neck [and] back."

## III.

A party is entitled to summary judgment if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact. Fed. R. Civ. P. 56(a). Material facts are those necessary to establish the elements of a party's cause of action. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. *Id.* The moving party has the burden of showing – "that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the movant satisfies this burden, then the non-movant must set forth specific, admissible facts that demonstrate the existence of a genuine issue of fact for trial. *Id.* at 322-23. A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant. *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991); *see Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 62 (4th Cir. 1995) ("Mere unsupported speculation . . . is not enough to defeat a summary judgment motion.").

In adjudicating a motion for summary judgment, a court may not resolve disputed facts, weigh the evidence, or make determinations of credibility. *Russell v. Microdyne Corp.*, 65 F.3d 1229, 1239 (4th Cir. 1995); *Sosebee v. Murphy*, 797 F.2d 179, 182 (4th Cir. 1986). Instead, a

---

suggests that Barnes had been prescribed meloxicam for his neck and back pain, which is not accounted for in the guidelines described by Dr. Martinez. No party has submitted Barnes' medical records or any relevant VDOC operating procedure as evidence.

court accepts as true the evidence of the non-moving party and resolves all internal conflicts and inferences in the non-moving party's favor. *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979).

## IV.

Barnes argues that he has a serious medical need and that the defendants ignored his complaints that the pain medication was ineffective in reducing his pain, persisted in a course of treatment that they knew was ineffective, and caused him to suffer significant pain. Drs. Moreno and Martinez argue that Barnes did not have a serious medical need and that, even if he did, his claims amount to nothing more than a disagreement between medical staff and an inmate over treatment. I conclude that genuine disputes of material facts preclude summary judgment and, therefore, will deny the parties' motions.

In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate the defendants' acts (or failure to act) amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (stating there is no expectation that prisoners will be provided with unqualified access to health care). Subjectively, deliberate indifference to a serious medical need requires proof that the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Disagreements between a health care provider and the inmate over a diagnosis and the proper course of treatment are not sufficient to support a deliberate indifference claim, and questions of medical judgment are not subject to judicial review. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985); *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975).

However, dismissal of an Eighth Amendment deliberate indifference claim may be improper where the plaintiff received some, or perhaps even extensive treatment, but the treatment that was provided ignored and failed to treat his symptoms. *See, e.g., De'Lonta v. Johnson*, 708 F.3d 520, 525 (4th Cir. 2013) (rejecting an argument that provision of "*some* treatment" necessarily rendered a deliberate indifference claim legally insufficient because such treatment may not be "*constitutionally adequate* treatment"). Therefore, a plaintiff may establish a plausible Eighth Amendment claim if he can demonstrate that "the care he is receiving is not effective." *Goodman v. Johnson*, 524 F. App'x 887, 889 (4th Cir. 2013); *Arnett v. Webster*, 658 F.3d 742, 753 (7th Cir. 2011) (stating an inmate with rheumatoid arthritis had raised a plausible Eighth Amendment claim where prison medical providers knew the plaintiff was in continuous pain for ten months, the plaintiff had reported the medication was ineffective, and medical providers persisted in the same course of treatment).

Viewing the evidence and all reasonable inferences drawn therefrom in the light most favorable to each non-moving party, I conclude that a reasonable fact-finder could return a verdict for each non-movant. Thus, genuine disputes of material facts preclude summary judgment.

V.

For the reasons stated herein, I will deny the parties' motions for summary judgment and set this matter for a jury trial.

**ENTER**: This 20th day of September, 2018.

_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE