# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| ROBERT LEE BARNES, | ) | |
|---|---|---|
| Plaintiff, | ) | Civil Action No. 7:17cv00080 |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| MALCOLM TAYLOR, *et al.*, | ) | By: Norman K. Moon |
| Defendants. | ) | United States District Judge |

Robert Lee Barnes, a Virginia inmate proceeding *pro se*, filed a civil rights action pursuant to 42 U.S.C. § 1983, alleging that the defendants, Drs. Moreno and Martinez, denied him adequate medical treatment for his neck and back pain. I previously denied the parties' cross-motions for summary judgment and set this matter for trial. The trial is scheduled for August 15 and 16, 2019. The parties have now filed a second round of cross-motions for summary judgment supported by affidavits. Having reviewed the record, I conclude that the parties' motions must be denied again.

## I. Dr. Moreno

On October 26, 2015, Barnes saw defendant Dr. Moreno concerning his neck and back.[1] At the time of this appointment, Barnes had an active prescription for 25 mg of Indocin, three times a day.[2] Barnes states that during the visit, he informed Dr. Moreno that he experienced daily pain that ranged from a four to a seven, on a scale of one to ten; he often woke up in the

---

[1] Prior to this appointment, Dr. Moreno had treated Barnes on two other occasions for back pain; however, Dr. Moreno's treatment at those appointments is not raised in this action. Dr. Moreno first learned of Barnes' back pain at an appointment on September 22, 2014. At the appointment, Dr. Moreno prescribed 500 mg of Naprosyn (a non-steroidal anti-inflammatory drug, also referred to as naproxen) for 90 days, for "back pain." On November 12, 2014, Barnes saw another doctor for a complaint of hand pain. At that appointment, the other doctor prescribed 25 mg of Indocin (another non-steroidal anti-inflammatory drug) twice a day for 180 days. On February 23, 2015, Barnes saw Dr. Moreno again for complaints of neck and back pain. At that appointment, Dr. Moreno increased Barnes' prescription for Indocin (which he had previously been prescribed for his hand pain) to three times a day and continued the prescription for an additional 270 days.

[2] That prescription began on or about February 23, 2015, at the time of his prior appointment with Dr. Moreno, and continued for 270 days, or until about November 20, 2015.

morning with "strong" back pain; there were times when he would bend his body to the side and it felt like the muscles around his spine were ripping apart and were "inflamed and sore"; the Indocin that Dr. Moreno had prescribed in February 2015 did not reduce Barnes' pain; and Barnes had stopped taking the medication "because it was ineffective."[3] To the contrary, Dr. Moreno avers that although Barnes complained of muscle tightness in his neck and back, he denied muscle pain or spasms.[4] Dr. Moreno performed a "physical exam, which involved a visual assessment of his chest, back, shoulders and arms," and found no abnormalities or objective signs of injury. Dr. Moreno states that Barnes was "generally comfortable" and that his vital signs did not reflect physical distress. In opposition, Barnes states that he was not comfortable as he was contemporaneously experiencing back and neck pain, of which he advised Dr. Moreno. Dr. Moreno avers that he diagnosed Barnes with "tightness of the back and neck," that Barnes was already prescribed Indocin, and that Barnes "did not describe or display any subjective or objective symptoms that necessitated a change in the dosage."[5] Dr. Moreno does not dispute that Barnes advised him that the previously-prescribed Indocin was ineffective in treating his pain. Dr. Moreno did not see or treat Barnes after November 3, 2015.

## II. Dr. Martinez

On November 18, 2016, Barnes saw defendant Dr. Martinez concerning his neck and back pain.[6] Barnes states that during the visit, he told Dr. Martinez that his pain usually ranged

---

[3] I note that it is unclear when and/or for how long Barnes stopped taking the medication.

[4] I note that in support of his first motion for summary judgment, Dr. Moreno averred that Barnes complained of "back pain with no known injury" and that he "reported occasionally high levels of pain" at the October 26th appointment. *See* Moreno Aff. 6, Docket No. 27-1, 6.

[5] I note that in support of his first motion for summary judgment, Dr. Moreno averred that he diagnosed Barnes with "chronic back pain" and "prescribed Indocin." *See* Moreno Aff. 6, Docket No. 27-1, 6.

[6] Barnes also saw Dr. Martinez for back pain on July 28, 2016; however Dr. Martinez's treatment of Barnes at that appointment is not raised this action. Barnes was also under Dr. Martinez's treatment beginning on

between a four and a seven, on a scale of one to ten, but sometimes it was a nine. Dr. Martinez avers that he examined Barnes and noted no swelling or decrease in range of motion. Barnes avers that Dr. Martinez never performed an examination of his neck or back. Dr. Martinez ordered x-rays of Barnes' spine and prescribed 50 mg of Indocin for 180 days.[7] Barnes states that he informed Dr. Martinez that the Indocin "did not work," and that he still experienced pain in his muscles and spine when taking the medication. To the contrary, in response to Barnes' request for admissions, Dr. Martinez states that Barnes did not advise him that Indocin was ineffective in treating his pain. *See* Req. Admis., Docket No. 69-1, p. 14. Dr. Martinez states that although Barnes alleges that he complained of "throbbing headaches and . . . tightness in the back of his head and tenderness in his neck and shoulder muscles [that] sometimes [got] so bad that he would wake up in the middle of the night," Dr. Martinez did not record these statements in Barnes' medical records. Dr. Martinez states that it is his routine practice to record such statements, especially when that pain awakens a patient at night and/or when the pain originates as a headache. Because he did not note those statements in the medical records, Dr. Martinez denies that they were made to him. In opposition, Barnes affirms that he did make the statements to Dr. Martinez and that he also told Dr. Martinez that his pain got so bad that he would have to lie down in his bed to relax the pains. Barnes took the Indocin for approximately six weeks after his appointment with Dr. Martinez and then submitted a sick call form on December 29, 2016, indicating that the medication was not working.

---

November 12, 2014, for other issues, including hand, ankle, arm, and wrist pain. Those injuries are also not raised in this action.

[7] I note that in support of his first motion for summary judgment, Dr. Martinez averred that he "suggested that [Barnes] continue to treat with Indocin." *See* Martinez Aff. 5, Docket No. 29-2.

Approximately one week later, Barnes saw Dr. Martinez concerning his complaint that the pain medication did not reduce his neck and back pain. Dr. Martinez reviewed Barnes' x-ray results, advised Barnes that the x-ray showed no damage to his neck or back, and stated that he would not change Barnes' medication. Barnes complained that the medication did not work and Dr. Martinez replied that the "only other thing" he could do for Barnes was to follow his "prior treatment plan for Naproxen or meloxicam." Barnes told Dr. Martinez that those plans were discontinued because they did not reduce his pain and told Dr. Martinez that he did not want them. Dr. Martinez asked Barnes to keep trying the Indocin. Dr. Martinez states that Barnes did not need any pain medication other than Indocin.[8]

### III. Summary Judgment

A party is entitled to summary judgment if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact. Fed. R. Civ. P. 56(a). Material facts are those necessary to establish the elements of a party's cause of action. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. *Id.* The moving party has the burden of showing – "that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the movant satisfies this burden, then the

---

[8] In support of his first motion for summary judgment, Dr. Martinez outlined the Virginia Department of Corrections' (VDOC) guidelines for when and how pain medication can be prescribed to inmates for treatment of issues such as chronic back pain: first, the doctor will prescribe Motrin (at a maximum daily dose of 800 mg); if Motrin is ineffective, the doctor will prescribe Naprosyn (at two daily doses of 500 mg); and if Naprosyn is also ineffective, the doctor can prescribe Indocin and an intermittent muscle relaxer. *See* Martinez Aff. 6, Docket No. 29-2. According to Dr. Martinez, Indocin is the highest level of pain medication that the VDOC allows inmates to take for issues such as chronic back pain. *Id.* I note that there is no evidence that Barnes was ever prescribed a muscle relaxer, as allowed for in the guidelines described by Dr. Martinez, and the evidence suggests that Barnes had been prescribed meloxicam for his neck and back pain, which is not accounted for in the guidelines described by Dr. Martinez.

non-movant must set forth specific, admissible facts that demonstrate the existence of a genuine issue of fact for trial. *Id.* at 322-23. A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant. *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991); *see Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 62 (4th Cir. 1995) ("Mere unsupported speculation . . . is not enough to defeat a summary judgment motion.").

In adjudicating a motion for summary judgment, a court may not resolve disputed facts, weigh the evidence, or make determinations of credibility. *Russell v. Microdyne Corp.*, 65 F.3d 1229, 1239 (4th Cir. 1995); *Sosebee v. Murphy*, 797 F.2d 179, 182 (4th Cir. 1986). Instead, a court accepts as true the evidence of the non-moving party and resolves all internal conflicts and inferences in the non-moving party's favor. *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979).

### IV. Eighth Amendment- Medical Treatment

Barnes argues that he has a serious medical need and that the defendants ignored his complaints that the pain medication was ineffective in reducing his pain, persisted in a course of treatment that they knew was ineffective, and caused him to suffer significant pain. Drs. Moreno and Martinez argue that Barnes did not have a serious medical need and that, even if he did, his claims amount to nothing more than a disagreement between medical staff and an inmate over treatment. I conclude that genuine disputes of material facts preclude summary judgment and, therefore, will deny the parties' motions.

In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate the defendants' acts (or failure to act) amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Objectively, the medical

condition at issue must be serious. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (stating there is no expectation that prisoners will be provided with unqualified access to health care). Subjectively, deliberate indifference to a serious medical need requires proof that the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Disagreements between a health care provider and the inmate over a diagnosis and the proper course of treatment are not sufficient to support a deliberate indifference claim, and questions of medical judgment are not subject to judicial review. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985); *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975).

However, dismissal of an Eighth Amendment deliberate indifference claim may be improper where the plaintiff received some, or perhaps even extensive treatment, but the treatment that was provided ignored and failed to treat his symptoms. *See, e.g., De'Lonta v. Johnson*, 708 F.3d 520, 525 (4th Cir. 2013) (rejecting an argument that provision of "*some* treatment" necessarily rendered a deliberate indifference claim legally insufficient because such treatment may not be "*constitutionally adequate* treatment"). Therefore, a plaintiff may establish a plausible Eighth Amendment claim if he can demonstrate that "the care he is receiving is not effective." *Goodman v. Johnson*, 524 F. App'x 887, 889 (4th Cir. 2013); *Arnett v. Webster*, 658 F.3d 742, 753 (7th Cir. 2011) (stating an inmate with rheumatoid arthritis had raised a plausible Eighth Amendment claim where prison medical providers knew the plaintiff was in continuous pain for ten months, the plaintiff had reported the medication was ineffective, and medical providers persisted in the same course of treatment).

The parties dispute, *inter alia*, whether Dr. Moreno knew of Barnes' pain, whether Barnes described to Dr. Moreno any symptoms that necessitated a change in medication, whether

6

Dr. Martinez examined Barnes, whether Barnes complained to Dr. Martinez about headaches and pain that woke him up, and whether Barnes told Dr. Martinez that the Indocin was ineffective. Viewing the evidence and all reasonable inferences drawn therefrom in the light most favorable to each non-moving party, I conclude that a reasonable fact-finder could return a verdict for each non-movant. Thus, genuine disputes of material facts preclude summary judgment.

## V. Conclusion

For the reasons stated herein, I will deny the parties' motions for summary judgment and this matter will proceed to trial.

**ENTER**: This 24th day of June, 2019.

*/s/ Norman K. Moon*
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE